UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. 5:26-cv-01583-KES                                    Date: April 7, 2026

Title:  JOSE PABLO TREJO GUZMAN v. JAMES JANECKA, et al.

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

Jazmin Dorado                                            Not Present
Courtroom Clerk                                         Court Reporter

ATTORNEYS PRESENT FOR               ATTORNEYS PRESENT FOR
PETITIONER:                                   RESPONDENTS:
None Present                                        None Present

PROCEEDINGS (IN CHAMBERS):    **Order GRANTING Application for Temporary Restraining Order (Dkt. 3) and Ordering Petitioner's Immediate Release from Custody**

I.    **BACKGROUND**

On April 1, 2026, Jose Pablo Trejo Guzman ("Petitioner") filed a counseled Petition for a Writ of Habeas Corpus ("Petition" at Dkt. 1) and Application for Temporary Restraining Order ("TRO Application" at Dkt. 3) challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").

A.    **Facts Alleged in the Petition.**

Petitioner is a 42-year-old native and citizen of El Salvador.  (Pet. at 6 ¶ 23.)  He entered the U.S. without inspection on or about April 5, 2004, at or around Tucson, Arizona.  (Id. ¶ 24.)  Since then, Petitioner has resided in Southern California—for approximately twenty-two (22) years.  (Id. ¶ 25.)

On or about February 11, 2011, Petitioner's home was raided by local law enforcement attempting to execute an arrest warrant for another individual residing at that address.  (Id. ¶ 26.)  After questioning Petitioner about his immigration status, the officers contacted ICE.  (Id. ¶ 26.)  That same day, DHS placed Petitioner in formal removal proceedings.  (Pet. at 6 ¶ 27; Pet. Ex. A / Dkt. 1-1 at 2 (notice to appear).)  DHS also conducted an individualized custody determination

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-01583-KES                                    Date: April 7, 2026
                                                             Page 2

and released Petitioner on his own recognizance.  (Pet. at 6 ¶ 28; Pet. Ex. B, C / Dkt. 1-1 at 6, 8 (order of release on recognizance and notice of custody determination).)  Petitioner's order of release required him to report for any hearing or interview as directed; surrender for removal if so ordered; obtain permission from ICE before changing his place of residence; not violate any local, State, or Federal laws; and assist DHS in obtaining any necessary travel documents.  (Id.)

Petitioner applied for asylum and withholding of removal and was granted employment authorization.  (Pet. at 7 ¶ 29.)  On April 28, 2014, the Immigration Court administratively closed Petitioner's removal proceedings.  (Pet. at 7 ¶ 31; Pet. Ex. E / Dkt. 1-1 at 17.)

Petitioner married in 2015, and the couple have four children who are minors and U.S. citizens.  (Pet. at 7 ¶¶ 30, 33.)  Petitioner is his household's primary financial provider.  (Pet. at 7 ¶ 33; Pet. Ex. F / Dkt. 1-1 at 19-31 (tax returns).)

On May 12, 2025, Petitioner's wife filed USCIS Form I-130, Petition for Alien Relative, on Petitioner's behalf.  (Pet. at 8 ¶ 34; Pet. Ex. G / Dkt. 1-1 at 33 (filing receipt).)  Unbeknownst to Petitioner, several months later, the Immigration Court re-calendared his removal proceedings and scheduled him to appear at a hearing on October 17, 2025.  (Pet. at 8 ¶ 35.)  The immigration attorney who had originally represented him withdrew from the case without informing Petitioner or confirming Petitioner's last known address with the Immigration Court.  (Id.)  Petitioner failed to attend the hearing and the Immigration Court ordered him removed in absentia.  (Id.)

On January 9, 2026, Petitioner and his wife appeared at the immigration Santa Ana Field Office for a scheduled interview regarding their pending I-130 petition.  (Pet. at 8 ¶ 36.)  ICE agents arrested Petitioner.  (Id.)  Petitioner received no prior notice of this arrest and was not served with an arrest warrant.  (Id. at 8 ¶¶ 36-37.)  He has not been given a bond hearing before an Immigration Judge because he is "being subjected to mandatory, administratively unreviewable detention under … 8 U.S.C. § 1225(b)(2)(A)."  (Pet. at 9 ¶ 39.)

Petitioner hired a new immigration attorney and on January 13, 2026, he successfully moved the Immigration Court to reopen his removal proceedings and vacate the in absentia order of removal.  (Pet. at 8-9 ¶ 38; Pet. Ex. H / Dkt. 1-1 at 35 (order of immigration judge).)  The Immigration Court's order specifically noted that Petitioner has multiple children and "no criminal history."  (Id.)

Petitioner's removal proceedings and I-130 petition remain pending.  (Pet. at 9 ¶ 39); see also EOIR Automated Case Information, https://acis.eoir.justice.gov/en/ (last accessed Apr. 7, 2026).  Petitioner remains in custody in Adelanto, California.  See ICE Online Detainee Locator, https://locator.ice.gov/odls/#/search (last accessed Apr. 7, 2026).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:26-cv-01583-KES                                        Date: April 7, 2026
                                                                                      Page 3

**B.      Claims and Relief Sought in the Petition and TRO Application.**

The present Petition raises three claims:

Ground One: Respondents are holding Petitioner in mandatory detention on the grounds that he is an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A).  See generally Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025); Matter of Q Li, 19 I&N Dec. 66 (BIA 2025).  He argues that he is entitled to a bond hearing under § 1226(a).  (Pet. at 16-23.)

Ground Two: Petitioner's re-arrest and detention violate the Fifth Amendment Due Process Clause because he was not given notice and an evidentiary hearing prior to his arrest. (Pet. at 23-32.)

Ground Three: Respondents' actions violated the Administrative Procedure Act ("APA") because they violate § 1226(a) and its implementing regulations.  (Pet. at 32-33.)

The TRO Application seeks Petitioner's "immediate release pending full adjudication of his underlying statutory claim."  (TRO App. at 22; see also Dkt. 3-3 (proposed order).)

**C.      Respondents' Response to the TRO Application.**

The Court[1] ordered Respondents to respond to the TRO Application.  (Dkt. 5.) Respondents filed a "Notice of Non-Opposition" stating that "they do not oppose" the TRO Application.  (Dkt. 8.)

**II.     LEGAL STANDARD**

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. sections 1221 to 1232.  Garland v. Aleman Gonzalez, 596 U.S. 543, 550 (2022).  But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen[2]] against whom proceedings under such part have been

_____

[1] The parties have consented to the jurisdiction of the Magistrate Judge. See generally 28 U.S.C. § 636(c).  Petitioner consented during the case-initiating process.  (Dkt. 6.)  Per General Order 26-05, Respondents had 24 hours from service of the Petition to withdraw their consent to the Magistrate Judge, and they did not do so.  (Dkt. 4-1 at 2.)

[2] This order generally uses the term noncitizen rather than alien.  See Avilez v. Garland, 69 F.4th 525, 527 n.1 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' … while the word noncitizen, which is synonymous … avoids such connotations.  Thus, noncitizen seems the better choice.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-01583-KES                                    Date: April 7, 2026
                                                             Page 4

initiated.'"  Id. (quoting 8 U.S.C. § 1252(f)(1)).  This Court, therefore, may grant relief in "individual cases."  Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 481–82 (1999).

The analysis that courts must perform for TROs and preliminary injunctions is "substantially identical."  Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 (9th Cir. 2001).  Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction.  See Fed. R. Civ. P. 65(b).

"A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  To qualify for injunctive relief, Petitioner must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  Id. at 20.

"[I]f a [petitioner] can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the [petitioner's] favor,' and the other two Winter factors are satisfied."  Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (citing Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011)).

## III.    DISCUSSION

### A.    Likelihood of Success on the Merits.

The Petition and TRO Application demonstrate that Petitioner is likely to succeed on the merits of his claims.  As noted above, Respondents have offered no evidence or argument in opposition to the TRO Application.

#### 1.    Grounds One and Three: Right to a Post-Arrest Bond Hearing.

Regarding Grounds One and Three, many district courts in this Circuit have held that a noncitizen like Petitioner—who allegedly entered without admission and was only apprehended by ICE many years later—is not an "applicant for admission" within the meaning of § 1225(b)(2)(A).  (Pet. at 6 ¶¶ 22-26); see, e.g., Maldonado Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987, 2025 U.S. Dist. LEXIS 262265 (C.D. Cal. Dec. 18, 2025).  Success on these claims would only require Respondents to provide him with a post-arrest bond hearing, however, not his release from custody.

#### 2.    Ground Two: Right to a Pre-Arrest Bond Hearing.

Petitioner is entitled to immediate release from custody because, as to Ground Two, he has shown that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in his favor.  Weber, 767 F.3d at 942.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-01583-KES                                      Date: April 7, 2026
                                                                Page 5

Under the Fifth Amendment Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

        a.        Private Interest Affected.

First, regarding the private interest affected, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). District courts in this circuit have routinely held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases). Petitioner also has a substantial private interest in remaining out of custody because that "would allow him to care for and continue to provide for his family…." Domingo, 2025 WL 1940179, at *3, 2025 U.S. Dist. LEXIS 133824, at *6.

        b.        Risk of Erroneous Deprivation and Value of Additional Safeguards.

Second, "the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

When ICE released Petitioner in 2011, they determined that he was not a flight risk or danger to the community. (Pet. Ex. C / Dkt. 1-1 at 8 (notice of custody determination, citing 8 C.F.R. § 236).) Respondents have never explained—either to Petitioner at the time of his arrest

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-01583-KES                                    Date: April 7, 2026
                                                                           Page 6

or in the present proceedings—what factual basis they have (if any) for changing that determination.  There is no evidence, for example, that Petitioner violated the conditions of his release, and he voluntarily appeared for the immigration appointment at which he was arrested.  See, e.g., Larios v. Albarran, No. 25-cv-08799, 2025 WL 3043391, at *8, 2025 U.S. Dist. LEXIS 215501, at *24 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard."); Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *10 ("In complying with Respondents' conditions of Petitioner's release, Petitioner was then arrested without a meaningful opportunity to be heard or other procedural safeguard posing a high risk of error, with substantial harm."); Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *5 (C.D. Cal. Mar. 9, 2026) ("[T]he Court finds that there is significant risk of erroneous deprivation given that Petitioner did not receive a pre-detention hearing to determine whether there is valid basis for detention, and considering that Petitioner asserts he has complied with all terms of his parole and has no criminal record.").  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural safeguard.

> c.      Government's Interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing.  Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov, 2026 WL 712827, at *2,  2026 U.S. Dist. LEXIS 49484, at *6 (same).  Moreover, in immigration court, custody hearings are routine and impose a minimal cost.  See Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *11; Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).  In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days.  Respondents have presented no evidence to the contrary, since they have not opposed the present TRO Application.

## B.      Irreparable Harm.

Petitioner is likely to suffer immediate and irreparable harm in the absence of preliminary relief.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).  Moreover, the Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained."  Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-01583-KES                                          Date: April 7, 2026
                                                                              Page 7

Those risks are present here.  Petitioner is the primary financial provider for his family, which includes minor children.  Additionally, Petitioner has an ongoing proceedings in Immigration Court, including an upcoming hearing scheduled for April 20, 2026.  See EOIR Automated Case Information, https://acis.eoir.justice.gov/en/ (last accessed Apr. 7, 2026).  If he were to be transferred out of the district, or not immediately released, his ability to prepare for those proceedings, including by engaging with his counsel, will be impaired.  See, e.g., Domingo, 2025 WL 1940179, at *3, 2025 U.S. Dist. LEXIS 133824, at *9 (finding irreparable harm under similar circumstances).

### C.        Balance of Equities and Public Interest.

The remaining two Winter factors, the balance of equities and public interest, merge when the government is the opposing party.  Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023).  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." Melendres, 695 F.3d at 1002 (citation omitted).  Further, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).  The balance of equities and public interest therefore "tip strongly" in Petitioner's favor.  Cottrell, 632 F.3d at 1134-35.

### D.        Security Bond.

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  The Court has "discretion as to the amount of security required, if any," and "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003).

## IV.    CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1.        The TRO Application (Dkt. 3) is **granted**.[3]

---

[3] To the extent Petitioner is seeking fees under the Equal Access to Justice Act ("EAJA") (see Pet. at 34), the EAJA provides in relevant part: "A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-01583-KES                                              Date: April 7, 2026
                                                                        Page 8

      2.      Respondents shall immediately release Petitioner from custody.

      3.      Respondents shall not re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, a pre-deprivation hearing at which his entitlement to bond is considered under § 1226(a), and not § 1225.

      4.      Respondents shall file a status report on or before **April 9, 2026** confirming their compliance with this Order.

      5.      Per the standard briefing schedule set under General Order 26-05 (Dkt. 4), Respondent's Answer is due by **April 10, 2026** and Petitioner's Reply is due by **April 13, 2026**.

Initials of Deputy Clerk <u>jd</u>